FLORENCE MORRISON, Appellant, v. THISTLE COAL COMPANY, DAVID DINNING AND DAVID STEELE.

Railroads:    SPUR TO MINE:    PUBLIC WAY:    CONSTITUTIONAL LAW.
1   Code section 2028 providing for the establishment of a highway over the land of another, and section 2031 providing for the construction of a railway to a quarry or mine, are to be construed together, and it is only when a highway has been established under the first section that a railway can be constructed thereon under the second, and when so constructed it becomes a public way, and is not in violation of the constitution prohibiting the condemnation of land for private purposes.

Condemnation:    CONSTRUCTION ON DIVISION LINE:    EVIDENCE.    Where
2   a railway company condemns a right of way and constructs a spur to a mine, following as nearly as practicable a division line, there is a substantial compliance with the statute requiring that the same shall be constructed on or immediately adjacent to such line.    Evidence considered and held to show construction in compliance with law.

Construction of Spur:    PUBLIC WAY.    A spur so constructed that
3   it constitutes an outlet from a mine to a station, though the station may not be at its junction with the main line, is in conformity with the statute and is a public way.

*Appeal from Appanoose District Court.*—HON. ROBERT SLOAN, Judge.

WEDNESDAY, APRIL 8, 1903.

THIS action was brought to enjoin defendants from constructing a railway track across plaintiff's land in pursuance of certain proceedings to condemn a right of way for such track from defendants' coal mine to a connection with a railroad which runs through plaintiff's land. A preliminary injunction was asked, but denied, and on final hearing plaintiff's petition was dismissed on the merits.    Plaintiff appeals.—*Affirmed.*

*W. H. Sanders* and *Vermilion & Valentine* for appellant.

*C. F. Howell* for appellees.

McClain, J.—The defendants Dinning and Steele are partners doing business under the name of the Thistle Coal Company, and engaged in mining coal from certain tracts of land on which they have a mining lease, with the privilege of exclusive occupancy of a four-acre tract, which does not abut upon any highway. There was some question raised on the trial as to whether there was a private way from the highway to this four-acre tract, but we think the evidence shows that defendants had no such private way. Defendants desired a spur track connecting the four-acre tract, as to which they had surface rights, in conducting their mining operations under their lease, with a railway, the track of which was located through plaintiff's land, which adjoins the land covered by defendants mining lease, and to construct this spur track defendants desired to have a right of way over plaintiff's land so far as to enable them to make connection with the railway. Defendants applied to plaintiff for permission to construct this spur track through her land, which was absolutely refused on the ground that they could not lawfully acquire a right of way over her land, and she refused to grant such right of way, although defendants offered her $100 by way of compensation. Thereupon defendants proceeded, in reliance on Code, sections 2028, 2031, to have a right of way condemned. The sections referred to are as follows:

"Sec. 2028. Any person, corporation or copartnership owning or leasing any land not having a public or private way thereto, may have a public way to any railway station, street or highway established over the land of another, not exceeding forty feet in width, to be located on a division line or immediately adjacent thereto, and

not interfering with buildings, orchards, gardens or ceme-teries; and when the same shall be constructed it shall, when passing through inclosed lands, be fenced on both sides by the person or corporation causing it to be established."

"Sec. 2031.  Any owner, lessee or possessor of lands having coal, stone, lead or other mineral thereon, who has paid damages assessed for roads established as above provided, may construct, use and maintain a railway thereon, for the purpose of reaching and operating any quarry or mine on such land and of transporting the products thereof to market.  In giving the notices required in such cases, the applicant shall state whether a railway is to be constructed and maintained on the way sought to be established, and, if it be so stated, the jury shall consider that fact in the assessment of damages."

These sections were incorporated into the Code from an act of the Fifteenth General Assembly, page 26, chapter 34, the first of them having been amended, how-ever, by Twenty-fifth General Assembly, page 32, chapter 18; and to meet a contention of appellee that section 2031 relates to the establishment of a right of way under the general sections relating to railroads, and is not subject to the limitations of section 2028, it is proper to say that we reach the conclusion that these two sections are to be construed together, and that it is only on a public way, such as is authorized to be located under section 2028, that a railway may be established under section 2031.  A right of way for a rail way may be a public way, even though it is not so maintained as to be available for use by the public for travel otherwise than by the use of railway cars.  Undoubtedly, it is public in such sense that another mine owner may make use of it without paying additional damages to the owner of the land through which it is constructed.  Such a right of way is, by the express terms of the statute, not

1. SPUR to mine: public way: constitutional law.

a private way, but public, and the statutory provisions authorizing it are not open to the objection that they provide for the condemnation of land for a private purpose. *Jones v. Mahaska Coal Co.*, 47 Iowa, 35; *Phillips v. Watson*, 63 Iowa, 28.

The substantial objections which plaintiff makes to the condemnation proceedings and to the claim by defendants to maintain a railway track on the right of way thus 2. CONDEMNA- condemned through plaintiff's land are that TION: con- struction on the statutory conditions have not been com- division line: evidence.    plied with, first, because the strip of land condemned is not "on the division line, or immediately adjacent thereto," and, second, that it is not for a way "to any railway station, street, or highway." To understand the first of these objections it is necessary to have in mind the location of the strip of land condemned with reference to plaintiff's boundary lines, and, without setting out a plat, it will be sufficiently intelligible if we say that defendant's mining lease covers the south half of the northwest quarter of section 2, and that plaintiff's land is the northeast quarter of the southwest quarter of section 2. The four-acre tract on which defendant's mine is located is near the southeast corner of the southwest quarter of the northwest quarter of the section, and the line of railroad which defendants desire to reach by the spur runs substantially east and west through the north part of plaintiff's property, tending to the north just east of the section center, that is, the northeast corner of defendant's premises, where it crosses the half section line.

Defendants could reach the railroad by constructing their spur east and west along the north line of plaintiff's property, and join their track to the railroad track on that line at such an angle that in making the necessary curve the track would not be more than forty feet from the division line. But the evidence shows that the surface of the land along that line is rough and broken, so that it

would be necessarily expensive to construct their spur in that direction, and also that it would require a much longer spur to reach the railroad than to approach it from the north near the west line of plaintiff's land. As now constructed, the spur is within forty feet of plaintiff's west line where it comes upon her property; but, instead of keeping within a forty-foot strip adjacent to plaintiff's west line, it departs to the east so that when it reaches a connection with the railroad track it is two hundred and eighty-seven feet from plaintiff's west line. Plaintiff's contention is that there is no authority to condemn any land for this spur outside of a forty-foot strip bounded on her west line, while defendants contend that the practical construction of the spur for the purpose of connecting with the railroad without too great a curve renders it necessary that the proposed right of way depart near the connection with the railway to some extent from such forty-foot strip.

An engineer who testifies for the plaintiff makes a theoretical plat, from which it appears that, if the spur were located to cross the half-section line west of plaintiff's northwest corner, it might, by the use of a twenty-six degree curve, join the railroad without coming further on plaintiff's land than forty feet from her west line, and he testifies that a twenty-six degree curve is practicable on a spur used only for hauling cars to and from a coal mine, although the spur as constructed has only a twelve degree curve, and it appears that that is as sharp a curve as is usual in good railroad construction. It seems to us that it could not have been intended that the statute should be so interpreted as to make impracticable or inconvenient the connection of the railroad track authorized to be constructed on the right of way to a mine, and that, if the proposed right of way follows a division line as nearly as practicable, the statute is substantially complied with. We therefore reach the conclusion that defendants were not bound to follow the north line of plaintiff's

premises for the purpose of reaching the railway in such way that the curve would not necessarily carry their track beyond forty feet from plaintiff's division line, such a route being impracticable; nor in following plaintiff's west line to make so sharp a curve as would prevent the safe and convenient hauling of cars on the line. We think the right of way as located was substantially in compliance with the direction of the statute that it should be on or immediately adjacent to a division line, and that plaintiff's objections on this ground are not well taken.

The objection that the right of way condemned does not lead to any railroad station, street, or highway is based on the fact that there is no railway station at the place where the spur from defendant's line joins the railway, but that, on the contrary, the nearest station is some mile or more distant from such junction. We see no merit in this objection. The spur does give an outlet from defendant's mine to a railway station, because by the use of it cars may be hauled from the mine to a station over the spur and the railway with which it is connected. It certainly could not have been intended that the right of way to be condemned should terminate at a station. It is evidently access to a railway station by means of the right of way and any public way with which it may be connected that is contemplated, and the railway with which connection is made is, in a proper sense, a public way, whether it may be called a highway or not.

3: CONSTRUC- TION of spur: public way.

Our conclusion, therefore, is that the statutory provisions above referred to have been substantially complied with, and that the injunction should be denied. It is proper to say that since this condemnation proceeding Code, section 2028, has been amended (29th General Assembly, chapter 82) so as to eliminate the requirement that the right of way for the railroad furnishing an outlet for a mine shall be on a division line, or immediately

adjacent thereto. Without holding that this is a legislative construction of Code, section 2028, we are content with the conclusion that prior to this amendment that section was to have a reasonable construction, and, as the question is not likely to again arise under that section, we do not think it necessary to further elaborate the reasons on which our conclusion is based.—AFFIRMED.